O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN N. RUSSO, | Case No. CV 12-792-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**INTRODUCTION**

On January 30, 2012, plaintiff Marilyn N. Russo filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents a single issue: whether the ALJ properly discounted her

credibility. Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at 4-14; Defendant's Memorandum in Support of Answer ("D. Mem.") at 2-7. Having carefully studied, inter alia, the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly discounted plaintiff's credibility. Therefore, the court affirms the Commissioner's decision denying benefits.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-two years old on the date of her June 9, 2010 administrative hearing, completed two years of college. AR at 29, 36. Her past relevant work was as a back office medical assistant, job development specialist, and administrative clerk. *Id.* at 54-55.

On June 1, 2009, plaintiff filed an application for a period of DIB due to a right ankle injury and depression. *Id.* at 66, 109. The Commissioner denied plaintiff's application, after which plaintiff filed a request for a hearing. *Id.* at 66-71.

On June 9, 2010, plaintiff, having waived representation, appeared and testified at a hearing before the ALJ. *Id.* at 32, 34-53. The ALJ also heard testimony from Howard Goldfarb, a vocational expert. *Id.* at 53-60. On July 8, 2010, the ALJ denied plaintiff's claim for benefits (the "2010 Decision"). *Id.* at 8-25.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity since her alleged onset date of disability, November 29, 2007. *Id.* at 13-14.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: chronic right ankle ligament and nerve impairment and status post-multiple right ankle surgeries, and obesity. *Id.* at 14.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 15.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] determining that she had the RFC to perform sedentary work; could lift/carry ten pounds occasionally and less than ten pounds frequently; and in an eight-hour workday with normal breaks, could stand/walk at least two hours and sit for six hours. *Id.* at 15-16. The ALJ also assessed the following additional limitations: plaintiff should avoid pushing and pulling activities with her right lower extremity; should never climb ladders, ropes, or scaffolds, and should not climb ramps or stairs more than occasionally; should no more than occasionally balance, stoop, kneel, crouch, or crawl; should avoid even moderate exposure to hazards such as dangerous machinery and unprotected heights; and should avoid walking over uneven terrain. *Id.* at 16.

The ALJ found, at step four, that plaintiff was capable of performing her past relevant work as a job development specialist. *Id.* at 20. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 22.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-7. The ALJ's decision stands as the final decision of the Commissioner.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

Plaintiff argues that the ALJ failed to make a proper credibility determination. Pl. Mem. at 4-14. Specifically, plaintiff contends that the ALJ did not provide clear and convincing reasons that are supported by substantial evidence for discounting plaintiff's credibility. *Id.* Although this court agrees that one of the reasons provided was not clear and convincing, the court finds that the ALJ gave other, legally sufficient grounds to support his conclusion concerning plaintiff's credibility.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at

5

17. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility.

Here, the ALJ found plaintiff's statements generally credible, but did not find her claims of disabling impairment fully credible. AR at 18. The ALJ provided four reasons for discounting plaintiff's credibility: (1) the objective medical evidence failed to fully support her claims; (2) plaintiff's overall treatment history failed to support her claims; (3) "inconsistent statements and actions," and (4) that plaintiff's claims were inconsistent with her daily activities. *Id.* at 18. Reasons one and three are clear, convincing and supported by substantial evidence.

First, the ALJ noted that the objective medical evidence did not fully support plaintiff's claims. *Id.* at 17; *see also Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of objective medicine supporting symptoms is one factor in evaluating credibility). With respect to the physical symptoms and limitations, the ALJ correctly found the reports of plaintiff's treating orthopedist, Dr. Carol Frey, brief and repetitive, opining that plaintiff was "temporarily totally disabled" without significant elaboration or sufficient objective support. *See id.* at 17, 318-452, 474-514. The ALJ also rightly noted that although the medical record reflected a re-injury to plaintiff's ankle in September 2009 (*see, e.g.*, *id.* at 479), "the medical record – including Dr. Frey's reports – is silent as to objective data that might possibly support greater limitations than those assessed by the State Agency." *Id.* at 17. The ALJ's reason is supported by substantial evidence. A lack of medical evidence supporting plaintiff's alleged symptoms cannot be the sole reason for rejecting her testimony; however, it can be one of several factors used in evaluating the credibility of her subjective complaints. *See Rollins* at 856-57.

The ALJ also found that plaintiff's overall treatment history undercut her credibility. AR at 18. In discussing plaintiff's treatment history, the ALJ simply revisited the objective medical evidence. *See id.* For example, he asserts that the record "indicates that the claimant has generally responded well to treatment," and that doctors notes refer to her "doing well" post-operatively in 2008 and 2009. *Id.* The ALJ concluded that plaintiff's conditions "are not as severe as she alleges." *Id.* Defendant seems to suggest plaintiff's treatment history was a basis separate from the objective medical evidence for discounting plaintiff's credibility. *See* D. Mem. at 4-5. It was not. "Using a doctor's description of a claimant in treatment notes to discredit the claimant's subjective testimony . . . is merely a specific application of a lack of objective medical evidence." *Palmer v. Astrue*, No. 11–CV–942 JLS (BLM), 2012 WL 3779046, at *5 (S.D. Cal. Aug. 30, 2012). Indeed, the ALJ himself lumps together his assessment of the objective medical evidence and treatment history in discussing plaintiff's credibility. *See* AR at 18. Thus, while this is a valid reason to discount plaintiff's credibility, again, the objective medical evidence and treatment history cannot be the only reason cited. And it was not.

The ALJ further cited "[i]nconsistent statements and actions, such as those noted" as a reason he found plaintiff's testimony not credible. *Id.* The court understands this as a reference to the ALJ's earlier analysis of plaintiff's testimony concerning her limitations. *See id*. at 16.

Plaintiff testified that she suffered from constant "radiating, sharp, burning pain" in her ankle that worsened if anything, like a sock or shoe, touched the area. *Id.* at 40-41. She has had three surgeries on her ankle and explained that her doctor has recommended removal of a nerve to alleviate her pain. *Id.* at 39-40. When the ALJ asked plaintiff: "And the first [surgery], you got some benefit and then you hurt your leg again?" plaintiff answered: "Correct" *Id.* at 39. But

plaintiff said that she was not doing well after the second surgery, on January 12, 2009. *Id.* at 40. Plaintiff testified that she gets some temporary relief from nerve stimulation and injections. *Id*. at 41. She has a prescription for pain medication and takes Ibuprofen but tries to limit her intake of both; she also uses local pain relievers and ice. *Id.* at 41-42. Plaintiff did not testify to whether the pain medication, local pain relievers or ice alleviate her discomfort. *Id.* She is most comfortable on the couch with her foot up. *Id.* at 50.

Plaintiff's condition has resulted in reduced socializing. *Id.* at 46. Additionally, her activities at home are limited. She does not cook and is able to do only minimal house work. She has had to hire a person to assist with housecleaning. *Id.* at 46. Plaintiff said that she is able to walk the length of ten houses, stand for "[p]robably an hour, shifting my weight to my left hip," sit with her foot down for two hours and with her foot up for three hours. *Id.* at 50-51. Plaintiff testified that she would not be able to do a sit-down job, in part because of the pain she experiences and because of the limitations on her driving. *Id.* at 52.

The portion of plaintiff's testimony that the ALJ appears to have found inconsistent and thus lacking credibility concerns her assessment of her physical abilities. *See id.* at 16. "Despite testifying to being able to walk the length of 10 houses, stand for one hour while shifting weight, and sit for two hours with her feet down and three hours with them elevated," wrote the ALJ, "she stated that she feels unable to return to work, even a sit-down job, due to pain and other symptoms." *Id.* at 16. The court finds the ALJ's reasoning here clear and convincing and supported by substantial evidence.

Finally, the ALJ found that plaintiff's daily activities were inconsistent with her symptoms. AR at 18; *see Morgan*, 169 F.3d at 599 (a plaintiff's ability "to spend a substantial part of [her] day engaged in pursuits involving the

8

performance of physical functions that are transferable to a work setting" may be sufficient to discredit her). Plaintiff testified that she was "okay" with self-care, such as dressing and bathing, and on her function report marked that she had "no problem" with personal care. *Id.* at 46, 152. She cannot cook or do housecleaning except for light chores, such as putting clean dishes in the dishwasher away. *Id.* Plaintiff explained that she could no longer socialize as she had previously because she cannot drive herself any significant distance. *Id.* at 46. She does, however, drive her children approximately one half mile to school. *Id.* at 46-47. Plaintiff described driving as a "huge" problem for her because of the limitations of her right foot. She uses her left foot to accelerate and limits her driving to back roads to avoid stop-and-go traffic. *Id.* at 47. Plaintiff no longer engages in any of her prior hobbies such as snowboarding, skiing, roller skating, softball, or coaching her children's baseball games. *Id.* at 48. Plaintiff testified that she attends church on Sundays and fellowship class after the service. *Id.* at 49. Plaintiff's husband also weighed in on her functionality. *Id.* at 143-150. He reported that plaintiffs assists with caring for her sons, including several hours of school work, and that she does very light housework. *Id.* at 143. Additionally, he said that plaintiff swims. *Id.* His sole comment concerning plaintiff's self-care is that plaintiff "is less motivated to care for herself" now. *Id.* at 144.

      The ALJ acknowledged plaintiff's testimony that she could not perform most activities without pain or other symptoms. *Id.* at 18. He wrote that plaintiff attested and her husband confirmed "that she has no difficulty tending to her personal care needs." *Id.* at 18. In his decision, the ALJ noted that plaintiff attends church services weekly and assists her children with their schoolwork. The ALJ concluded that these were "activities that one likely would not expect a person with the claimant's alleged disabling symptoms to be able to perform." *Id.* But the ALJ's analysis does not support this conclusion. He does not explain how

9

her self-described ability to carry on quite limited daily activities is inconsistent with her claimed pain and limitations. *See Reddick*, 157 F.3d at 722 (only if a plaintiff's level of activity is inconsistent with her alleged limitations will these activities have any bearing on claimant's credibility); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"). Plaintiff's ability to perform a few, limited daily activities does not support the ALJ's finding that she lacked credibility.

Although the ALJ's reference to plaintiff's daily activities was not a clear and convincing reason for discounting her credibility, this error was harmless, given the other clear and convincing reasons he cited. *See Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ's error in relying on one of several reasons in support of an adverse credibility determination was harmless because ALJ's remaining reasons and ultimate credibility determination were supported by substantial evidence). In particular, the ALJ provided two legally sufficient reasons for discounting plaintiff's credibility. Accordingly, the court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's subjective complaints of pain and limitation.

//

# V.
# **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: December 10, 2012

SHERI PYM
United States Magistrate Judge